**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SEAN EARLEY,

                              Plaintiff,

    - v -                                         Civ. No. 9:08-CV-669
                                                               (FJS/RFT)

ANTHONY J. ANNUCCI, *Executive Commissioner and Counsel, New York State Department of Correctional Services*;
BRIAN FISCHER, *Commissioner of the New York State Department of Correctional Services, in his official and unofficial capacity*;
RICHARD DESIMONE, *in his individual capacity and his official capacity as Associate Counsel in Charge of the Office of Sentencing Review of the New York State Department of Correctional Services*; LUCIEN J. LECLAIRE, JR., *in his individual capacity*; GLENN S. GOORD, *in his individual capacity*; HENRY LEMONS, JR., *in his individual and official capacity as Chairman and Chief Executive Officer of the New York State Division of Parole*; GEORGE B. ALEXANDER, *in his individual capacity*; ROBERT DENNISON, *in his individual capacity*; BRION D. TRAVIS, *in his individual capacity*;
JOHN AND JANE DOES 1-50, *various training, supervisory and policymaking employees of the New York State Department of Correctional Services or the New York Division of Parole, in their individual capacities*,

                              Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

CHAMBERLAIN, D'AMANDA LAW FIRM       K. WADE EATON, ESQ.
Attorney for the Plaintiff
2 State Street
1600 Crossroads Building
Rochester, NY 14614

MULDOON, GETZ LAW FIRM                 JON P. GETZ, ESQ.
Attorney for the Plaintiff
144 Exchange Boulevard, Suite 402
Rochester, NY 14614

| | |
|---|---|
| HON. ERIC T. SCHNEIDERMAN<br>New York State Attorney General<br>Attorney for the Defendants<br>The Capitol<br>Albany, NY 12224 | RICHARD LOMBARDO, ESQ.<br>Assistant Attorney General |

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

Plaintiff Sean Earley, a former New York State prison inmate, brings this action against the Defendants, pursuant to 42 U.S.C. § 1983. Plaintiff's allegations stem from the imposition of post-release supervision ("PRS") upon the completion of the determinate term of imprisonment that the New York State Supreme Court for Kings County prescribed pursuant to Plaintiff's guilty plea to Attempted Burglary in the Second Degree. *See* Dkt. No. 60, Second Am. Compl. Currently before the Court is Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(b).[1] Dkt Nos. 63, 67, & 68. Plaintiff opposes the Motion.[2] Dkt. Nos. 72-75. For the reasons that follow, this Court recommends that Defendants' Motion be **granted**.

---

[1] Defendants' Motion for Summary Judgment is comprised of the following: Dkt. Nos. 63, Notice of Mot.; 63-1, Mem. of Law; 63-2, Decl. of Richard Lombardo, Esq., dated Mar. 21, 2011; 63-3 – 63-45, Exs. A–U, App'x, and Decl. of Service; 67, Defs.' Statement Pursuant to Local Rule 7.1(a)(3); & 68, Terrence X. Tracy, Decl., dated Apr. 21, 2011. Defendants also submit a Reply that includes Anthony J. Annucci Decl., dated July 18, 2011, with Ex. V, and a Reply Mem. of Law. Dkt. Nos. 76-77.

[2] Plaintiff's opposition to Defendants' Motion is comprised of the following: Dkt. Nos. 72, Pl.'s Statement Pursuant to Local Rule 7.1(a)(3); 73, Sean Earley, Aff., dated June 17. 2011; 74, K. Wade Eaton, Esq., Decl., dated June 20, 2011; 74-1 – 74-5, Exs. A-D; & 75, Mem. of Law. Plaintiff filed further submissions in response to Defendants' assertion of qualified immunity which include Dkt. No. 81, Lt., dated May 11, 2011, and Dkt. No. 82, Sean Earley Corrected Aff., dated Aug. 1, 2011.

# I. BACKGROUND

## A. Facts

On August 6, 1998, the New York State Legislature enacted N.Y. Penal Law § 70.45(1), also known as "Jenna's Law." Under the law, violent felonies that had previously been punished by the imposition of indeterminate sentences were instead assigned determinate sentences with a mandatory term of PRS. The law provided that "[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision," but the statute did not contain a requirement that a sentencing judge announce the PRS.[3] N.Y. PENAL LAW § 70.45(1) (2007).

In the Fall of 1999, Plaintiff was charged with multiple violations of the New York Penal Law prohibiting burglary. Dkt. No. 82, Pl.'s Corrected Aff., dated Aug. 1, 2011, at ¶ 2. On February 29, 2000, Plaintiff was sentenced by the Honorable Michael Ambrosio, Acting Justice of the New York State Supreme Court for Kings County, to a determinate prison term of six years pursuant to Plaintiff's guilty plea to Attempted Burglary in the Second Degree. *Id.* at ¶¶ 4-8; Dkt. No. 67, Defs.' 7.1 Statement, at ¶ 1. Judge Ambrosio did not specify any inclusion of PRS in the sentence, and PRS was not discussed with Plaintiff at the time of his plea. Pl.'s Corrected Aff. at ¶ 13; *see also* Dkt. No. 63-3, Ex. A, Plea Hr'g Tr.

In March 2000, Plaintiff was received by the New York State Department of Correctional Services ("DOCS")[4] at Downstate Correctional Facility to begin his six-year period of incarceration.

---

[3] On June 30, 2008, Penal Law § 70.45(1) was amended to require that a sentencing court "shall in each case state not only the term of imprisonment, but also an additional period of post-release supervision determined pursuant to this article." N.Y. PENAL LAW § 70.45(1) (2008).

[4] On April 1, 2011, the New York State Department of Correctional Services and Division of Parole merged together into one comprehensive agency entitled the New York State Department of Corrections and Community Supervision ("NYS DOCCS"). In order to maintain consistency with Plaintiff's pleadings, which were first initiated in 2008, and the considerable procedural history behind this action, we will continue to refer to this agency as DOCS.

Pl.'s Corrected Aff. at ¶ 14. After a transfer to Groveland Correctional Facility, Plaintiff began "hearing rumors from fellow inmates in October 2001 that DOCS had added periods of post release supervision to the sentences of certain inmates," and in February 2002, Plaintiff requested a statement of his sentence. *Id.* at ¶ 18; Second Am. Compl. at ¶ 63. Roxanne Underwood, the Groveland Correctional Facility Inmate Records Coordinator, provided Plaintiff with a copy of his commitment order and time calculation sheet, the latter of which included the notation "PRS 05 00 00," from which Plaintiff concluded that a five-year term of post release supervision had been added to his determinate prison sentence.[5] Second Am. Compl. at ¶¶ 63-66. Plaintiff alleges it was at this point that he was first aware PRS was attached to his sentence. *Id.* at ¶ 66.

On April 14, 2002, Plaintiff sent a letter to Underwood, advising her that PRS was never discussed with him prior to his guilty plea, PRS was not included in his sentence, Plaintiff would not have pled guilty had he known that a five-year PRS term was included in his sentence, and requesting all references to PRS be removed from his records. Defs.' 7.1 Statement at ¶ 5; *see also* Dkt. No. 63-6, Ex. D, Pl. Lt., dated Apr. 14, 2002. In response, Underwood wrote that she could not amend a court ordered commitment and that Plaintiff should petition the sentencing court. Defs.' 7.1 Statement at ¶ 6. Plaintiff alleges that he appealed "Underwood['s] deni[al]" to the New York State Inspector General, but never received a response. Second Am. Compl. at ¶¶ 75-77.

In July 2002, Plaintiff filed a motion requesting that the sentencing court vacate "any term of post release supervision that DOCS had imposed." Second Am. Compl. at ¶ 79; *see also* Defs.'

---

[5] New York Penal Law § 70.45(2) provides that the length of PRS for predicate violent felony offenders is five years. Attempted Burglary in the Second Degree is a violent felony offense. N.Y. PENAL LAW § 70.02(1)(c). Plaintiff was convicted of Attempted Burglary in the Third Degrees in 1996, and Attempted Burglary in the Second and Third Degree in 1992, thus classifying him as a predicate felony offender. *See* New York State DOCCS, Inmate Population Information Search, *available at* http://nysdocslookup.docs.state.ny.us/ (last visited December 13, 2011, search for Department Identification Number ("DIN") 08-A-1823; 00-A-1512; and 96-A-6935).

7.1 Statement at ¶ 7.[6]  Plaintiff further stated that he wished to retain his plea and have only the sentence in his judgment modified.  Dkt. No. 63-7, Ex. E, Mot. to Vacate, at ¶ 2.  By decision and order, dated March 4, 2003, the Kings County Supreme Court denied Plaintiff's motion.  *See* Dkt. No. 63-8, Ex. F, at p. 2 ("Specifically, [Earley] seeks to have the period of post-release supervision vacated or have the determinate sentence reduced from six to five years with the five year period of post release supervision.  In light of the mandatory nature of the post-release supervision, [Earley's] motion to vacate that component of the sentence must be denied.").  On May 19, 2003, the New York State Appellate Division, Second Department, denied Plaintiff's motion for leave to appeal from the denial.  Defs.' 7.1 Statement at ¶ 10; *see also* Dkt. No. 63-9, Ex. G.

On June 20, 2003, Plaintiff filed a petition for a writ of *habeas corpus* in the United States District Court for the Eastern District of New York.  Dkt. No. 63-10, Ex. H.  By an Order, dated December 31, 2003, the Honorable Edward R. Korman, then-Chief United States District Judge, dismissed Plaintiff's petition.[7]  Dkt. No. 63-11, Ex. I.  On June 18, 2004, Chief Judge Korman granted Plaintiff's motion for rehearing, and upon rehearing, again denied Plaintiff's petition.[8]  Dkt. No. 63-12, Ex. J.

On or about September 16, 2004, Plaintiff was conditionally released from prison and

---

[6] Plaintiff, in his Corrected Affidavit, as well as in his Second Amended Complaint, states that this motion was made in "late June of 2002." *See* Second Am. Compl at ¶ 79; Pl.'s Corrected Aff. at ¶ 25.  However, the motion papers are dated July 11, 2002.  *See* Dkt. No. 63-7, Ex. E, Mot. to Vacate.

[7] Judge Korman dismissed Earley's petition as untimely, but he commented on the merits, stating that while Plaintiff "should have been advised [that PRS was a direct consequence of his sentence] before entering a plea of guilty . . . . it was entirely reasonable for the state court to reject [Earley]'s claim where [he] explicitly stated that he did not want the only appropriate remedy [under New York Law] - vacatur of his conviction - were it determined that his claim had merit."  Dkt. No. 63-11, Ex. I (internal quotation marks omitted).

[8] Upon rehearing, Judge Korman admitted that the court should not have rendered a discussion on the petition without allowing Earley's time to reply to expire.  In reviewing the timeliness of the petition, the court acknowledged that it should not have decided that issue without first conducting a hearing, but the "alternative basis for [the court's] initial ruling" supports the denial of the petition.  Dkt. No. 63-12, Ex. J, at p. 6.

advised by DOCS that he would remain subject to PRS for five years. Pl.'s Corrected Aff. at ¶ 30. On July 21, 2005, Plaintiff was taken into custody for violating the terms of his PRS. Defs.' 7.1 Statement at ¶ 15. This arrest occurred one week before Plaintiff's six-year incarceration sentence was scheduled to expire. Pl.'s Corrected Aff. at ¶ 37. On September 17, 2005, pursuant to a parole revocation hearing, Plaintiff was re-incarcerated for twelve months. Defs.' 7.1 Statement at ¶ 16.

On June 9, 2006, the United States Court of Appeals for the Second Circuit reversed the Eastern District's denial of Earley's petition for a writ of *habeas corpus* and remanded the case back to the District Court to determine whether the petition was timely, and if so, to issue a writ removing the term of PRS from Plaintiff's sentence. *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006). In their decision, the Second Circuit held that the administrative imposition of PRS to Plaintiff's sentence violated his federal constitutional rights. *Id.* at 74-76. Meanwhile, on July 21, 2006, Plaintiff was again conditionally released. Defs.' 7.1 Statement at ¶ 18. On September 11, 2006, Plaintiff was taken into custody for another violation of the terms of his PRS, and on October 5, 2006, following another parole revocation hearing, Plaintiff was re-incarcerated for twelve months. *Id.* at ¶¶ 18-20.

By decision and order, dated May 1, 2007, the Eastern District determined that the petition was timely submitted, granted Plaintiff's petition for *habeas* relief, and expunged the term of PRS from Plaintiff's sentence. *Earley v. Murray*, 2007 WL 1288031 (E.D.N.Y. May 1, 2007). However, in the decision, Judge Korman stayed the order granting the writ for twenty-eight days to "permit the sentencing court to exercise its power to conform the sentence to the mandate of New York law," as the Second Circuit stated that its ruling was not intended to preclude the State from moving to modify Plaintiff's sentence to include the mandatory PRS term. *Id.* at *3. Judgment was entered on May 11, 2007. Dkt. No. 63-19, Ex. Q. By order, dated May 16, 2007, Judge Korman vacated

the stay granted in the court's May 1, 2007 order and granted a stay pursuant to the Kings County District Attorney's motion for a stay pending the State's petition to the Supreme Court of the United States for a writ of *certiorari* from the Second Circuit's decision. Dkt. Nos. 63-20, Ex. R, Order, dated May 16, 2007; 63-21, Ex. S, District Attorney's Notice of Appeal; 63-22, Ex. T; District Attorney's Motion for a Stay of Judgment. By an order dated June 13, 2007, the Second Circuit denied the District Attorney's motion for a stay, Dkt. No. 63-23, Ex. U, and on June 27, 2007, Plaintiff was released from custody, Defs.' 7.1 Statement at ¶ 27.

### B. Procedural History

On June 26, 2008, Plaintiff filed this § 1983 action, *pro se*, against Anthony Annucci and Roxanne Underwood, alleging that DOCS's administrative imposition of PRS on Plaintiff's sentence violated his rights to due process and to be free from cruel and unusual punishment. *See* Dkt. No. 1, Compl. On October 20, 2008, Annucci and Underwood moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Dkt. No. 14.

On August 24, 2009, attorney K. Wade Eaton appeared on behalf of Plaintiff. Dkt. No. 33. By Stipulation and Order of this Court, on September 21, 2009, Plaintiff's action was dismissed with prejudice against Underwood, the Motion to Dismiss was withdrawn, and Plaintiff was granted leave to file an Amended Complaint. Dkt. No. 37. Plaintiff's Amended Complaint was filed on September 24, 2009. Dkt. No. 38, Am. Compl. In it, Plaintiff repeated his claims from his first Complaint regarding DOCS's imposition of PRS on top of his determinate sentence, which resulted in Plaintiff being falsely imprisoned for approximately twenty-one months beyond his six-year sentence for breaking the conditions of the PRS term. Such administrative imposition of PRS violated his constitutional rights to due process and freedom from cruel and unusual punishment.

*See id.* at ¶ 93.

By Stipulation and Order, on December 1, 2009, this action was stayed pending a decision by the Second Circuit in the matter of *Scott v. Fischer*, 616 F.3d 100 (2d Cir. 2010), addressing identical legal issues and similar facts raised herein – whether the imposition and enforcement of PRS, which was not mentioned at Scott's sentencing, subjects the defendants to § 1983 liability after Scott's petition for *habeas* relief was granted, or whether the defendants were entitled to qualified immunity. Dkt. No. 41. On August 2, 2010, the Second Circuit decided *Scott v. Fischer*, dismissing Scott's appeal by holding that

> [i]n the presence of a statute that requires all sentences for certain crimes to be accompanied by mandatory PRS, and New York cases that routinely upheld the administrative imposition of that PRS, we conclude that it was not clearly established for qualified immunity purposes prior to *Earley* [*v. Murray*, 451 F.3d 71 (2d Cir. 2006) (Second Circuit's decision on Plaintiff's *habeas* petition)] that the administrative imposition of PRS violates the Due Process Clause.

616 F.3d at 107.

By Stipulation and Order, dated January 13, 2011, Plaintiff was granted leave to file a Second Amended Complaint. Dkt. No. 59. The Second Amended Complaint was filed on January 14, 2011, and is based upon the same factual allegations contained in the Complaint and Amended Complaint. Dkt. No. 60, Second Am. Compl.

On March 21, 2011, Defendants filed a Motion to Dismiss the Second Amended Complaint. Dkt. No. 63. By Order of this Court, dated April 8, 2011, in light of the voluminous Exhibits attached to Defendants' Motion, we converted the Motion *sua sponte* to a Motion for Summary Judgment and gave the parties further opportunity to supplement their submissions. Dkt. No. 66.

## II. DISCUSSION

## A. Standard of Review

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v.*

*Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

### B. Plaintiff's Claims

In his Second Amended Complaint, Plaintiff claims that the DOCS and Division of Parole Defendants administratively imposed a term of PRS upon his determinate prison sentence in violation of his constitutionals rights guaranteed by the Fifth, Eighth, and Fourteenth Amendments, causing Plaintiff to be unlawfully imprisoned for approximately twenty-one months beyond his six-year determinate sentence.

Plaintiff brings four causes of action: 1) Defendants violated Plaintiff's constitutional rights when they administratively imposed PRS, based upon New York Penal Law § 70.45, thus rendering his guilty plea unknowing, involuntary, and unintelligent; 2) Defendants violated Plaintiff's constitutional rights when they unlawfully imprisoned him based upon the unlawfully imposed PRS, which was not a part of the sentence imposed by the sentencing court; 3) Defendants violated Plaintiff's constitutional rights by administratively imposing and enforcing PRS; and 4) the Parole Defendants aided and abetted the DOCS Defendants in depriving Plaintiff of his constitutional

rights. Second Am. Compl. at ¶¶ 104-39.

Plaintiff's claims, though convoluted and somewhat contradictory,[9] can be summarized as stating only two legal theories: that the Defendants violated Plaintiff's constitutional rights by administratively imposing and enforcing a term of PRS which the sentencing judge did not explicitly include in Plaintiff's sentence (Causes of Action 2, 3, & 4); and that Defendants violated Plaintiff's constitutional rights by imprisoning him pursuant to a guilty plea that was not voluntary because Plaintiff was unaware PRS was a consequence of Plaintiff's plea (Cause of Action 1). The latter of these theories, encompassed in Plaintiff's first cause of action, was added in the Second Amended Complaint, undoubtedly in an effort to escape the preclusive effect of *Scott v. Fischer* for which this action was stayed. Regardless, in light of the *Scott* decision, Defendants are entitled to qualified immunity with regard to all of Plaintiff's claims.

### C. Qualified Immunity

The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988). In deciding whether to grant a motion for summary judgment on qualified immunity grounds, a court conducts a two-part inquiry. The court asks whether "the facts, viewed in the light most favorable to the plaintiff, show that the [official's] conduct violated a constitutional right." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011) (citation omitted); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001), *abrogated on other grounds*

---

[9] Plaintiff claims that DOCS's "actions in administratively imposing and enforcing a period of [PRS] which was not included in the [P]laintiff's sentence violated the Fifth, Eighth[,] and Fourteenth Amendments to the United States Constitution." Second Am. Compl. at ¶ 125. However, Plaintiff also claims that the "inclusion of a period of [PRS] pursuant to New York Penal Law § 70.45 was a direct consequence of the Plaintiff's guilty plea." *Id.* at ¶ 106.

by *Pearson v. Callahan*, 555 U.S. 223 (2009). And, "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. at 232 (internal quotation marks and citation omitted). "If the conduct did not violate a clearly established constitutional right, or if it was objectively reasonable for the [official] to believe that his conduct did not violate such a right, then the [official] is protected by qualified immunity." *Gilles v. Repicky*, 511 F.3d 239, 244 (2d Cir. 2007). Until recently, courts faced with qualified immunity defenses have applied this two-part inquiry in this order – first asking whether the defendant violated a constitutional right and, if it was determined that right was violated, only then asking whether that right was "clearly established." *See Saucier v. Katz*, 533 U.S. at 201-02. Now, the court may exercise discretion in deciding the order in which to conduct the qualified immunity analysis. *Doninger v. Niehoff*, 642 F.3d at 345 (citing *Pearson v. Callahan*, 555 U.S. at 241).

In order to determine whether a right is clearly established, courts look to whether (1) it was defined with reasonable clarity; (2) the Supreme Court or the Second Circuit has confirmed the existence of the right; and (3) a reasonable defendant would have understood that his conduct was unlawful. *Young v. Cnty. of Fulton*, 160 F.3d 899, 903 (2d Cir. 1998). "The question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in a defendant's position should know about the constitutionality of the conduct." *Id.* Furthermore, the court's determination of whether the right at issue was "clearly established" must be undertaken in light of the specific context of the case instead of as a broad, general proposition. *Doninger v. Niehoff*, 642 F.3d at 345 (quoting *Saucier v. Katz*, 533 U.S. at 201). The analysis must be particularized; thus, it "is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-

existing law the unlawfulness must be apparent." *Id.* at 345-46 (citation omitted).

The question we turn to is whether the Defendants' administrative imposition and enforcement of PRS onto Plaintiff's sentence was a "clearly established" violation of a constitutional right. Pursuant to the *Scott v. Fischer* decision, this question is indisputably answered in the negative. 616 F.3d 100. *Scott v. Fischer* clearly states that DOCS and Division of Parole officials are entitled to qualified immunity in connection with § 1983 damages claims arising out of PRS that was administratively attached to sentences prior to *Earley v. Murray*, 451 F.3d 71. *Earley* was the first occasion the Second Circuit held that the "administrative imposition" of a term of PRS violated a prisoner's rights under the Constitution, and did so by relying on the "broader holding" of a 70-year-old Supreme Court decision, *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936). 451 F.3d at 74-75. As the Second Circuit found in *Scott v. Fischer*, it was not until *Earley* was decided that the administrative imposition of PRS was "clearly established" as a violation of constitutional rights, in the qualified immunity context. 616 F.3d at 106-07.[10] Thus, the defendants in *Scott* were entitled to qualified immunity.

Further, since their decision in *Scott v. Fischer*, the Second Circuit and other District Courts that have considered the issue have held that state officials are entitled to qualified immunity for the imposition as well as the enforcement of PRS. *See, e.g.*, *Rivers v. Fischer*, 390 F. App'x 22 (@c Cir. 2010); *Albergottie v. New York City*, 2011 WL 519296, at *5-7 (S.D.N.Y. Feb. 15, 2011); *Hardy v. Fischer*, 701 F. Supp. 2d 605 (S.D.N.Y. 2010); *Rodriguez v. Fischer*, 2010 WL 438421 (E.D.N.Y. Feb. 3, 2010); *Sinclair v. Goord*, Civ. No. 9:07-CV-1317, Dkt. No. 14, Order, dated Mar. 10, 2009

---

[10] The Second Circuit in *Scott v. Fischer* discussed the difference between "clearly established" in the qualified immunity sense and "clearly established" for purposes of *habeas corpus* analysis. For that discussion, we refer to the case itself. 616 F.3d at 105-07.

(N.D.N.Y.) (LEK/RFT) (a copy of which was filed in this action at Dkt. No. 26).

In the same way, the Defendants here are entitled to that immunity. *Earley v. Murray*, again, Plaintiff's action for *habeas* relief, was decided in 2006, approximately six years after the Defendants administratively imposed PRS on top of Plaintiff's incarceration sentence. Qualified immunity is analyzed from the defendant's perspective at the time of the challenged conduct, *Hanrahan v. Doling*, 331 F.3d 93, 98 (2d Cir. 2003), where the "decisive fact is not that [the defendant's] position turned out to be incorrect, but that the question was open at the time he acted[,]" *Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985) (Brennan, J., concurring). Therefore, because the administrative imposition of PRS was not a clearly established constitutional violation prior to *Earley*, qualified immunity shields Defendants' reliance on the presumably valid statute, N.Y. Penal Law § 70.45(1).

Plaintiff's attempt in his first cause of action to restate the issue in order to avoid preclusion from *Scott* fails. Plaintiff claims that because PRS was assigned to his sentence without his knowledge, his plea was invalid as not knowing, voluntary, and intelligent, and thus, DOCS was unlawfully imprisoning Plaintiff after the point he informed DOCS that his conviction was unlawful; "DOCS'[s] failure to take appropriate action once it knew that [P]laintiff's sentence was based on an invalid guilty plea violated [P]laintiff's constitutional rights." Second Am. Compl. at ¶¶ 71-74. However, as the Second Circuit in *Scott v. Fischer* stated, DOCS had no authority nor affirmative legal duty, much less a clearly established one, to seek re-sentence, unilaterally revoke the PRS, or to otherwise handle the cases of inmates, until June 2008, when the New York State Legislature provided a statutory method by which to do so. 616 F.3d at 109-10 (referencing N.Y. CORR. LAW § 601-d (2008)). Because there was no "clearly established" right at issue that the Defendants

purportedly violated, Defendants are entitled to qualified immunity on this cause of action as well. *Id.* ("[Plaintiff] provides no authority for the proposition asserted . . . that DOC[S], as opposed to the District Attorney, the sentencing court . . . or any other state actor with responsibilities with respect to criminal sentencing, had such an affirmative legal duty at the time, much less a clearly established one.") (citing *Mitchell v. Forsyth*, 472 U.S. at 526).

Therefore, Defendants are entitled to qualified immunity to all of Plaintiff's claims.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 63) be **granted** and this case be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   December 28, 2011
        Albany, New York

Randolph F. Treece
U.S. Magistrate Judge