**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SEAN EARLEY,

                                  Plaintiff,

         - v -                                    Civ. No. 9:08-CV-669
                                                          (FJS/DJS)

ANTHONY J. ANNUCCI, *Executive Commissioner and*
*Counsel, New York State Department of Correctional Services*,

                                    Defendant.

**APPEARANCES:**                                 **OF COUNSEL:**

EATON LAW FIRM                       K. WADE EATON, ESQ.
*Attorney for the Plaintiff*
27 Locust Street
Pittsford, NY 14534

MULDOON, GETZ LAW FIRM        JON P. GETZ, ESQ.
*Attorney for the Plaintiff*
144 Exchange Boulevard, Suite 402
Rochester, NY 14614

HON. ERIC T. SCHNEIDERMAN      KEITH J. STARLIN, ESQ.
New York State Attorney General      Assistant Attorney General
*Attorney for the Defendants*
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

      This civil rights case arises out of the administrative imposition of five years of post-release

supervision ("PRS") by the New York State Department of Correctional Services ("DOCS")[1] onto

---

[1] On April 1, 2011, the New York State Department of Correctional Services ("DOCS") and the New York State Division of Parole ("DOP") merged together into one comprehensive agency entitled the New York State Department
(continued...)

the sentence of Plaintiff Sean Earley. *See* Dkt. No. 60, 2d Am. Compl. Specifically at issue are the actions of Defendant Anthony Annucci, counsel for DOCS, in response to the Second Circuit's decisions in *Early v. Murray*, 451 F.3d 71 ("*Early I*"), *reh'g denied*, 462 F.3d 147 ("*Early II*") (2d Cir. 2006), *cert. denied sub nom. Burhlre v. Earley*, 551 U.S. 1159 (2007), which concluded that the administrative imposition by DOCS of a term of PRS violated Plaintiff's Due Process rights under the United States Constitution.

Currently pending before the Court is the Earley's Motion for Partial Summary Judgment on the issue of liability and Annucci's Motion for Summary Judgment based, *inter alia*, on the grounds of qualified immunity. Dkt. Nos. 124, Pl.'s Mot. Summ. J. & 125, Def.'s Mot. Summ. J. For the reasons that follow, it is recommended that the Plaintiff's Motion be **granted in part and denied in part** and Defendant's Motion be **granted in part and denied in part**.

## I. BACKGROUND

### A. Facts

In the Fall of 1999, Plaintiff was charged with multiple violations of the New York Penal Law prohibiting burglary. Dkt. No. 83, Rep.-Rec. and Order, dated Dec. 28, 2011, at p. 3.[2] On February 29, 2000, after pleading guilty to attempted burglary in the second degree, Plaintiff was sentenced by the Honorable Michael Ambrosio, Acting Justice of the New York State Supreme Court for Kings County, to a determinate prison term of six years. *Id.* Judge Ambrosio did not

---

[1](...continued)
of Corrections and Community Supervision ("DOCCS"). In order to maintain consistency with Plaintiff's pleadings, which were first initiated in 2008, and in light of the considerable procedural history associated with this action, I will continue to refer to this agency as DOCS.

[2] The history and background of Earley's criminal case and detention, which are no longer in dispute, are derived from previous submissions and Court decisions. References are therefore made directly to those previous submissions or decisions.

specify any inclusion of PRS in the sentence.[3]  *Id.*

In March 2000, Plaintiff was received by DOCS at Downstate Correctional Facility to begin his six-year period of incarceration.  *Id.*  In February 2002, Plaintiff requested a statement of his sentence; a DOCS official provided him with a copy of his commitment order and time calculation sheet, the latter of which included the notation "PRS 05 00 00," from which Plaintiff concluded that a five-year term of PRS had been added to his determinate prison sentence.  *Id.* at p. 4.

In July 2002, Plaintiff filed a motion in state court requesting the sentencing court to vacate "any term of post release supervision that DOCS had imposed."  *Id.*  Plaintiff further stated that he wished to retain his plea and have only the sentence in his judgment modified.  *Id.* at p. 5.  By decision and order, dated March 4, 2003, the Kings County Supreme Court denied Plaintiff's motion based, in part, on the fact that PSR was mandated.  *Id.*  On May 19, 2003, the New York State Appellate Division, Second Department, denied Plaintiff's motion for leave to appeal.  *Id.*

On June 20, 2003, Plaintiff filed a petition for a writ of *habeas corpus* in the United States District Court for the Eastern District of New York.  *Id.*  By an Order, dated December 31, 2003, the Honorable Edward R. Korman, then-Chief United States District Judge, dismissed Plaintiff's petition.  *Id.*  On June 18, 2004, Chief Judge Korman granted Plaintiff's motion for rehearing and again denied Plaintiff's petition.  *Id.*

On or about September 16, 2004, Plaintiff was conditionally released from prison and advised by DOCS that he would remain subject to PRS for five years.  *Id.* at pp. 5-6.  On July 21, 2005, Plaintiff was taken into custody for violating the terms of his PRS.  *Id.* at p. 6.  This arrest

---

[3] New York Penal Law § 70.45, also known as "Jenna's Law," provides that the length of mandatory PRS for predicate violent felony offenders is five years.  N.Y. PENAL LAW § 70.45(2).  Attempted Burglary in the Second Degree is a violent felony offense.  N.Y. PENAL LAW § 70.02(1)(c).

occurred one week before Plaintiff's six-year incarceration sentence was scheduled to expire. *Id.* On September 17, 2005, pursuant to a parole revocation hearing, Plaintiff was re-incarcerated for twelve months. *Id.*

On June 9, 2006, the United States Court of Appeals for the Second Circuit reversed the Eastern District's denial of Earley's *habeas corpus* petition and remanded the case back to the district court to determine whether the petition was timely, and if so, to issue a writ removing the term of PRS from Plaintiff's sentence. *See Earley I*, 451 F.3d 71. In that decision, the Second Circuit held that the administrative imposition of PRS to Plaintiff's sentence violated his federal constitutional rights. *Id.* at 74-76. Defendants requested rehearing, arguing that even though the sentencing court did not specify any period of PRS, New York law automatically imposed it. In August 2006, the Second Circuit rejected this position, reiterating that "[a] judicially-imposed sentence includes only those elements explicitly ordered by the sentencing judge." *Earley II*, 462 F.3d at 149.

Meanwhile, on July 21, 2006, Plaintiff was again conditionally released. Dkt. No. 83 at p. 6. But, on September 11, 2006, Plaintiff was taken into custody for another violation of the terms of his PRS, and on October 5, 2006, following another parole revocation hearing, Plaintiff was re-incarcerated for twelve months. *Id.*

Upon remand from the Second Circuit, the Eastern District determined, on May 1, 2007, that the petition was timely submitted, and thus it granted Plaintiff's petition for *habeas* relief and expunged the term of PRS from Plaintiff's sentence. *Earley v. Murray*, 2007 WL 1288031 (E.D.N.Y. May 1, 2007). However, in that decision, Judge Korman stayed the order granting the writ for twenty-eight days in order to "permit the sentencing court to exercise its power to conform

the sentence to the mandate of New York law." *Id.* at *3. Judgment was entered on May 11, 2007. Dkt. No. 83 at p. 6. By order, dated May 16, 2007, Judge Korman vacated the stay granted in the previous order granted the Kings County District Attorney's motion for a stay pending the State's petition to the United States Supreme Court for a writ of *certiorari* from the Second Circuit's decision. *Id.* at pp. 6-7. But, by an order, dated June 13, 2007, the Second Circuit denied the District Attorney's motion for a stay, and on June 27, 2007, Plaintiff was released from custody. *Id.* at p. 7.

## B. Procedural History

On June 26, 2008, Plaintiff filed this civil action *pro se*,[4] pursuant to 42 U.S.C. § 1983, against Defendant Anthony Annucci and others, alleging that DOCS's administrative imposition of PRS onto Plaintiff's sentence violated his rights to due process and to be free from cruel and unusual punishment. *See* Dkt. No. 1, Compl. On August 24, 2009, while a Motion to Dismiss was pending on the Court's Docket, K. Wade Eaton, Esq., appeared on behalf of Plaintiff. Dkt. No. 33. Pursuant to a stipulation of the parties, which was endorsed by the Court, Plaintiff filed an Amended Complaint on September 24, 2009, and the pending Motion to Dismiss was deemed withdrawn without prejudice. Dkt. Nos. 37, Stip. and Order, & 38, Am. Compl.

By Stipulation and Order, filed on December 1, 2009, this action was stayed pending a decision by the Second Circuit in the matter of *Scott v. Fischer*, 2009 WL 928195 (S.D.N.Y. Mar. 30, 2009), which presented similar issues regarding the administrative imposition of PRS by DOCS. Dkt. No. 41. On August 2, 2010, the Second Circuit decided *Scott v. Fischer*, dismissing Scott's appeal by holding that

---

[4] At that time, Plaintiff was again in DOCS's custody, pursuant to other criminal conduct not connected with the conviction and sentence at issue in this action.

-5-

> [i]n the presence of a statute that requires all sentences for certain crimes to be accompanied by mandatory PRS, and New York cases that routinely upheld the administrative imposition of that PRS, we conclude that it was not clearly established for qualified immunity purposes **prior** to *Earley* [*I* (Second Circuit's decision on Plaintiff's *habeas* petition)] that the administrative imposition of PRS violates the Due Process Clause.

616 F.3d 100, 107 (2d Cir. 2010) (emphasis added).

By Stipulation and Order, dated January 13, 2011, Plaintiff was granted leave to file a Second Amended Complaint, Dkt. No. 59, which was filed on the following day, Dkt. No. 60.[5]  On March 21, 2011, Defendants filed a Motion to Dismiss the Second Amended Complaint, which upon referral to this Court, was *sua sponte* converted to a Motion for Summary Judgment.  Dkt. Nos. 63 & 66.  On December 28, 2011, this Court issued a Report-Recommendation and Order, which, relying specifically upon the authority of *Scott* as well as other district court cases, recommended that all Defendants be afforded qualified immunity for both the imposition and enforcement of PRS. Dkt. No. 83 at pp. 13-14.  The Report-Recommendation and Order was adopted by the District Court, and Plaintiff's Second Amended Complaint was dismissed.  Dkt. No. 85.

Plaintiff appealed to the Second Circuit, which, after combining this matter with several other appeals, reversed the District Court's ruling as to Defendant Annucci's entitlement to qualified immunity.  *Vincent v. Yelich*, 718 F.3d 157 (2d Cir. 2013), *cert. denied sub nom. Annucci v. Vincent*, 135 S. Ct. 948 (2015).  In issuing its decision, the Second Circuit noted that the *Earley I* decision made clear that any administrative addition of PRS to the actual sentence articulated and imposed

---

[5] The Second Amended Complaint contains four separate causes of action: 1) Defendants violated Plaintiff's constitutional rights when they administratively imposed PRS, based upon New York Penal Law § 70.45, thus rendering his guilty plea unknowing, involuntary, and unintelligent; 2) Defendants violated Plaintiff's constitutional rights when they imprisoned him based upon the unlawfully imposed PRS, which was not a part of the sentence imposed by the sentencing court; 3) Defendants violated Plaintiff's constitutional rights by administratively imposing and enforcing PRS; and 4) the Parole Defendants aided and abetted the DOCS Defendants in depriving Plaintiff of his constitutional rights. 2d Am. Compl. at ¶¶ 104-39.

by the sentencing judge was unlawful, and that this holding was understood by Defendant Annucci at least as of the time that *Earley I* was decided. *Id.* at 168-69. In other words, at least under federal law, the sentence is what the sentencing court says it is, nothing more and nothing less. With regard to the ambiguity of New York State court decisions, the Second Circuit noted that the fact that the New York State Court of Appeals did not announce the illegality of administratively imposed PRS until 2008 did not affect the invalidity of such impositions under federal law, as had been announced in *Earley I* in 2006, because "[s]tate court decisions that rejected *Earley I's* holding could not disestablish the federal right to due process for the purposes of qualified immunity analysis." *Id.* at 169. Additionally, the Circuit Court distinguished *Scott* upon both factual and procedural grounds, including the fact that Defendant Annucci was not a party to that action. *Id.* at 171-72.

The Second Circuit went on to note that after *Earley I*, DOCS and Defendant Annucci were left with two choices: 1) contact the respective court to have a defendant formally and on the record re-sentenced to PRS, or 2) excise PRS from their records. *Id.* at 172. Regarding Earley specifically, "he was entitled, unless he was resentenced, to be released from DOCS custody." *Id.* The Circuit concluded that a question of fact existed as to Defendant Annucci's entitlement to qualified immunity – more specifically, the adequacy of Annucci's response once alerted in *Early I* with regard to the improper administratively imposed PRS. *Id.* at 173. In other words, did Defendant Annucci "make reasonable efforts either to seek resentencing of such person or to end the[] unconstitutional imprisonment and excise PRS from their prison records[?]" *Id.* at 174.

The Second Circuit upheld the District Court's dismissal of Plaintiff's claims against all Defendants other than Annucci. *Id.* at 174-75. As to Annucci, the Second Circuit remanded the matter back to this Court for further development of the record. *Id.* at 174. A petition for writ of

*certiorari* was filed by Defendant Annucci on September 25, 2014, which was denied on January 12, 2015. *See* Dkt. Nos. 97 & 100. After the remand to this Court, a scheduling order was put into place on July 15, 2015, authorizing the parties to do limited discovery on the qualified immunity issue. *See* Dkt. No. 114. After the conclusion of that discovery, the present Motions were filed.

## II. DISCUSSION

### A. Standard of Review

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp.v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings,*

*Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Serv., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

In the case at bar, the parties have each filed a separate Motion/Partial Motion for Summary Judgment. Dkt. Nos. 124 & 125. The Court does not consider the filings to be cross-motions, but instead has reviewed and will render recommendations on each Motion on its own merit. In this regard, the Court notes that the parties' respective Motions are well supported and the issues have been fully addressed therein. Thus, the Court declines the invitation to hold any particular portion of one party's motion or response thereto as inadequate. In light of intervening Second Circuit precedent (as set forth more fully below) and because the Motions deal essentially with the same claims and defenses with little to no significant divergences with the material facts, the Court will address the claims and defenses in one discussion.

## B. Qualified Immunity

As noted above, in deciding the direct appeal of this Court's decision, the Second Circuit, based upon the record that was before it, rejected the notion that Defendant Annucci was entitled to qualified immunity. *Vincent v. Yelich*, 718 F.3d 157. The matter was therefore remanded back to this Court for further development of the record with regard to Defendant Annucci's actions following the Second Circuit's rulings in *Early I* and *Early II* in 2006. *Id.*; *see also* Dkt. No. 89. Because in his current Motion, Defendant Annucci again raises his entitlement to qualified immunity, and because this is specifically addressed in Plaintiff's Motion, I start with the applicable law of that affirmative defense.

The doctrine of qualified immunity protects governmental officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). In order for a constitutional right to be clearly established, it must be defined with reasonable specificity, as established by both Supreme Court and Second Circuit law, and sufficiently clear that a reasonable official would have understood that the conduct at issue was unlawful under the existing law. *Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012); *Looney v. Black*, 702 F.3d 701, 706 (2d Cir. 2012). A right is clearly established "not as a broad general proposition . . . but in a particularized sense so that the contours of the right are clear to a reasonable official," and that existing precedents have placed it "beyond debate." *Id.* at 2093 & 2094 (internal quotation marks and citations omitted); *Hope v. Pelzer*, 536 U.S. 730, 753 (2002) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"If the conduct did not violate a clearly established constitutional right, or if it was objectively reasonable for the [official] to believe that his conduct did not violate such a right, then the [official] is protected by qualified immunity." *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d Cir. 2011) (alterations in original) (citation omitted).

In anticipating Defendant's resurrection of this defense, Plaintiff argues in his Motion that Defendant Annucci is not entitled to qualified immunity because he failed to act with objective reasonableness after *Early I* was decided. Dkt. No. 124-1, Pl.'s Mem. of Law, at p. 14. In particular, Plaintiff maintains that the facts conclusively establish that Defendant Annucci did not excise the PRS that was administratively imposed, did not take action to have him resentenced, and did not cease the custodial and administrative operations against him. *Id.* Instead, Defendant Annucci instructed DOCS personnel to inform inmates that DOCS was not bound by the Second Circuit and would not implement *Earley I*'s mandate as departmental policy. *Id.* at p. 7.

Conversely, Defendant makes a series of arguments in his Motion that go both to the state of the law in 2006 and his reasonable response amid that legal landscape. Dkt. No. 125-2. In particular, and in support of the defense of qualified immunity, Annucci points to the following: (1) the divergence between federal and state law, as well as case law both in and out of the Second Circuit, on the issue of the lawfulness of administrative imposition of PRS, *id.* at pp. 21-25; (2) he reasonably relied upon a presumptively valid statute, *id.* at p. 28; (3) he took prompt action by notifying OCA of the issue identified by the *Earley* decisions and OCA indicated that such were not binding on state courts, *id.* at pp. 25-26; (4) oftentimes DOCS lacked the relevant documentation in determining if a sentencing error occurred, *id.* at p. 21; (5) between 2006 and 2008 DOCS had no statutory or other authority to seek resentencing, *id*. at pp. 27 & 32; (6) he was not required to notify

the prosecuting attorney that the sentence was invalid so that the prosecutor could make a motion to the sentencing court for resentencing, *id.* at p. 32; and (7) his conduct was at all times objectively reasonable, *id.* at p. 29.

First and foremost, while Defendant spends much of his Brief arguing, once again, that the law of the constitutionality of administratively imposed PRS was unclear until 2008 when the New York State Court of Appeals issued its rulings in *People v. Sparber*, 889 N.E.2d 459 (2009) and *Garner v. N.Y. State Dep't of Corr. Servs.*, 889 N.E.2d 467 (2008), and that this uncertainty entitles him to qualified immunity, it is important to note that this very argument was previously presented by the Defendant to the Second Circuit who considered and rejected it in its comprehensive decision. *Vincent v. Yelich*, 718 F.3d at 167-75. Thus, the Defendant's attempts to rehash and reargue whether the law was clearly established are barred by law of the case doctrine.[6] *Id.*

I note that in remanding the matter to this Court, the Second Circuit did not determine the other aspect of qualified immunity, namely whether Annucci acted reasonably in light of the clearly established law, and instead left that issue to the District Court for further factual development. *Id.* at 174. However, during the pendency of this action, and indeed following the full briefing of the current dispositive Motions, the Second Circuit decided that very issue based upon the very same evidence provided to this Court and that holding is also binding on this Court. *See Betances v.*

---

[6] The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 7-8 (2d Cir. 1996) (quoting *Dilaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir. 1992)). In accordance with this doctrine, when an issue has been adjudicated by an appellate court, then the district court is bound to follow such ruling. *United States v. Cirami*, 563 F.2d 26, 32-33 (2d Cir. 1977) ("When an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue."). Such is distinguishable from a district court's ability to reconsider its own rulings. *Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Only those questions actually decided become law of the case. *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979). Furthermore, and as may be applicable herein, "[w]hile the doctrine is ordinarily applied in later stages of the same lawsuit, it also has application to different lawsuits between the same parties." *In re PCH Assoc.*, 949 F.2d 585, 592 (2d Cir. 1991) (citations omitted).

*Fischer*, 837 F.3d 162 (2d Cir. 2016).

In *Betances*, Annucci and others were named as defendants in a class action, brought by prisoners that, as with Earley,[7] challenged the continued application of administratively imposed PRS. *See Betances v. Fischer*, 144 F. Supp. 3d 441 (S.D.N.Y. 2015). On appeal to the Second Circuit, the district court's finding that the defendants violated the class action plaintiffs' Due Process rights was upheld. *See generally Betances v. Fischer*, 837 F.3d 162. As it specifically relates to Defendant Annucci, the Second Circuit held as follows:

(1) Defendant Annucci was DOCS Counsel until October 2007 and was Executive Deputy Commissioner and Counsel until December 2008. *Id*. at 167.

(2) After *Earley I*, "DOCS's duty [under federal law] was to enter the sentence imposed by the judge, and that sentence only, without the PRS term required by § 70.45, and then to ensure that, by the time the inmate left custody of DOCS to begin serving any PRS term, the term had been pronounced by a judge." *Id.* at 173. As to individuals that suffered retrospective PRS violations, such as those reincarcerated for violations of unpronounced PRS terms, Annucci and DOCS had an obligation to "take prompt and reasonable steps" to remediate that situation by, for example, launching a resentencing initiative and filing a declaratory judgment action. *Id.*

(3) Defendant Annucci understood *Earley I's* holding on June 20, 2006 but did not at that time change DOCS's procedures to bring it into compliance with that Second Circuit decision. *Id.* at 167.

(4) In August 2006, Defendant Annucci emailed DOCS personnel to inform them that *Earley I* conflicted with New York State law and that DOCS would not follow its holding. *Id.*

---

[7] Indeed, it appears that Plaintiff had the opportunity to join that class action but opted to proceed on his own. Dkt. No. 108.

*-13-*

(5)  While Annucci reasonably could have reasonably waited to take action until August 31, 2006, the date the Second Circuit decided *Earley II,* which denied the state defendants' motion for rehearing, he in fact waited more than nineteen months thereafter to take the first meaningful steps to bring DOCS into compliance with *Earley I.  Id.* at 171-72.

(6)  It was only after the New York Court of Appeals issued its decisions in *Garner* and *Sparber* that Defendant Annucci and DOCS, in late April and early May 2008, took "meaningful steps to remediate DOCS's and DOP's PRS practices."  *Id.*

(7)  That the nineteen-month delay between *Earley II* and Annucci's first significant remedial efforts was objectively unreasonable.  *Id.* at 173.

While in our case, Counsel for Defendant Annucci did not have the benefit of the *Betances* decision at the time he made his submissions to this Court, those arguments have subsequently been decided by the Circuit in a factually identical setting, and as to those rulings both the Court and Defendant Annucci are bound.  *See supra* note 6; *see also In re PCH Assoc.*, 949 F.2d 585, 592 (2d Cir. 1991);  *Panayoty v. Annucci,* 898 F. Supp. 2d 469, 479-80 (N.D.N.Y. 2012) ("With vertical *stare decisis,* the decisions of an appellate court, *i.e.,* a circuit court of appeals or the Supreme Court, will have preclusive effect on subsequent decisions made by lower courts.").

Thus, in light of the Second Circuit's holding in *Betances*, as it pertains to Mr. Early and his Due Process claims asserted herein, I find that Defendant Annucci is entitled to qualified immunity for the period of time from March 2000, when Early was received by DOCS at Downstate Correctional Facility to start his six-year period of incarceration, which presumably would be the moment that the five-year term of PRS was added to Plaintiff's sentence, until August 2006 when *Early II* was decided.  *See Betances v Fischer*, 837 F.3d at 172-73 ("[A]lthough [Annucci]

indisputably understood *Earley I* as of June 20, 2006, we conclude that he could reasonably have waited to take action until after August 31, 2006, the date on which we issued *Earley II*, denying the motion for rehearing."). Thus, the period in question for which Annucci may be held liable for violating Plaintiff's Due Process rights is from the date of the *Early II* decision through June 27, 2007, when Plaintiff was released from DOCS's custody. With this particular time-frame in mind, I will address the parties' respective Summary Judgment Motions regarding Defendant's liability on the claims presented in the Second Amended Complaint.

### C. Plaintiff's Second Amended Complaint

To reiterate, in his Second Amended Complaint, Plaintiff sets forth the following claims:

1) Defendants violated Plaintiff's constitutional rights when they administratively imposed PRS, based upon New York Penal Law § 70.45, thus rendering his guilty plea unknowing, involuntary, and unintelligent;

2) Defendants violated Plaintiff's constitutional rights when they imprisoned him based upon the unlawfully imposed PRS, which was not a part of the sentence imposed by the sentencing court;

3) Defendants violated Plaintiff's constitutional rights by administratively imposing and enforcing PRS; and

4) the Parole Defendants aided and abetted the DOCS Defendants in depriving Plaintiff of his constitutional rights.

2d Am. Compl. at ¶¶ 104-39.

In seeking partial summary judgment, Plaintiff believes he is entitled to judgment as a matter of law on the issue of Defendant's liability. I address each of the claims set forth in Plaintiff's Second Amended Complaint *seriatim*.

In Plaintiff's First Cause of Action, he alleges that the addition of PRS violated his plea agreement because that condition was never part of that agreement, thus rendering his plea involuntary. Dkt. No. 124 at pp. 11-12. Plaintiff argues that Defendant Annucci is personally liable for this constitutional violation because he created a policy or custom under which the violation occurred, and because he personally allowed it to continue. *Id.* at p. 13. It is Plaintiff's contention that as early as April 15, 2002, DOCS was aware that the administrative imposition of PRS violated the conditions set forth in Plaintiff's plea agreement. *Id.* at pp. 11-12.

Defendant maintains that this claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Def.'s Mem. of Law at pp. 35-36. While I question whether *Heck* is applicable here in light of the fact that at the time Plaintiff initiated this civil rights action, he was not in custody for the sentence at issue, *see e.g.*, *Paulino v. Fischer*, 2013 WL 5230264, at *6 n.6 (N.D.N.Y. Sept. 16, 2013), I am also doubtful of the continued viability of this claim following the precedential authority cited above which clearly limits the period of time for which Annucci is liable for any Due Process violation. Indeed, the interjection of this claim into the Second Amended Complaint seems to be a maneuver to overcome the holding in *Vincent* and to back door the time within which Annucci could be liable.

According to Earley, the constitutional fault with his plea relates solely to the administrative imposition of PRS.[8]  It is clear, as noted in *Earley I* and *II*, that Early's six-year determinate sentence, which did not include a term of PRS, *was* the operative sentence. It was only when five years of PRS was thereafter added administratively, pursuant to the then-understanding of the application of State law, that the constitutional violation occurred. But that act, to the extent it can

---

[8] Indeed, this is the position Earley has consistently staked out in his many endeavors to challenge, in both State and federal courts, the administrative imposition of PRS. In his State court challenges, Earley maintained that his guilty plea was knowing as to the determinate sentence of incarceration he received, and he has never sought to undermine the imposition of that aspect of his sentence. *See* Dkt. No. 63-8, Dec. & Order, dated Mar. 4, 2003 (Sup. Ct. Kings County).

be said was done by Annucci or at his direction or pursuant to some policy he created, is protected by qualified immunity. The enforcement of that PSR in September 2004, when Early was initially conditionally released from prison, and in July 2005, when he was taken into custody a mere week prior to the expiration of his six-year determinate sentence for violating the conditions of PRS, also fall within the time-period wherein Annucci may claim qualified immunity. It is only Annucci's actions after August 31, 2006 that are at issue, and that claim, as noted below, is adequately set forth in the Second and Third causes of action in the Second Amended Complaint.

The Court questions whether Earley's First Cause of Action is cognizable, or even if Annucci had any personal involvement as it relates to this claim. Regardless of these obstacles, I recommend that Defendant's Motion for Summary Judgment be **granted** as to Plaintiff's first cause of action, relating to the voluntariness of his guilty plea, because Annucci is entitled to qualified immunity for acts committed prior to August 31, 2006, and because the remaining aspect of that claim is essentially duplicative of other claims set forth in the Second Amended complaint for any acts or omissions following that date. *See Warren v. Pataki*, 823 F.3d 125, 142-43 (2d Cir. 2016) (upholding dismissal of the plaintiff's false imprisonment claims that were duplicative of the plaintiff's due-process claims); *Ferran v. Town of Nassau*, 11 F.3d 21, 23 (2d Cir. 1993) (dismissal of § 1985 claim was proper where it merely duplicated part of the claim under § 1983).

Resolution of the issue of Annucci's liability on the Second and Third Causes of Action in the Second Amended Complaint is not difficult. In those claims, Earley asserts that the continued imposition/enforcement of PRS and resulting incarceration violated his Due Process rights. The material facts in support of this claim are not reasonably in dispute. Mr. Earley had a five-year term of PRS administratively added to his sentence, which the Second Circuit deemed a violation of due

process. *Vincent v. Yelich*, 718 F.3d 157. The Circuit also ruled that as early as June 9, 2006, Defendant Annucci was aware that the administrative addition of PRS was in violation of Plaintiff's rights, and the matter became clearly settled law on August 31, 2006. *Betances v Fischer*, 837 F.3d at 172-73. For 300 days thereafter, Plaintiff had his liberty restricted as a result of the unlawfully imposed PRS, with 289 of those days being a period of incarceration in DOCS's custody as a result of violation of PRS. Plaintiff was released from this illegal custody on June 27, 2007. Because Defendant Annucci was aware of the infringement of Plaintiff's Due Process rights by the continued enforcement of an unlawful imposition of PRS, he had a responsibility to take appropriate action to remedy this ongoing violation. His failure to do so renders him liable under 42 U.S.C. § 1983 for those damages which Plaintiff can establish proximately resulted from his acts or omissions.[9]

Defendant has provided a host of reasons why liability should not be imposed, and the Court finds none of them to be persuasive in light of the intervening *Betances* decision. Furthermore, the fact that the DOP issued a warrant for Earley based upon alleged violations of the terms of his PRS and thereafter imposed a twelve-month sentence, does not constitute an intervening and superseding act breaking the causal chain and thus relieving Defendant Annucci from his responsibility. *See Zahrey v. Coffey*, 221 F.3d 342, 352 (2d. Cir 2000) ("Even if the intervening decision-maker . . . is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty."). In Plaintiff's case, the DOP was relying upon a PRS sentence that Defendant knew (as of August 31, 2006) was illegally imposed, and as a result he still had a constitutional duty to promptly intervene, and insofar as his reasonable

---

[9] Plaintiff is not limited, as Defendant impliedly argues, to the remedy of resentencing, as Section 1983 provides a money damage remedy independent of any state remedy. *Monroe v. Pape*, 365 U.S. 167, 183 (1961).

actions could have prevented Plaintiff from his imprisonment, he is liable. Thus, the unlawful detention is not privileged. *Vincent v. Yelich*, 718 F.3d at 173 ("[W]hether DOCS had any participation in the parole revocation proceedings for alleged violations of PRS conditions, . . . DOCS's ensuing custody of Earley for such violations was unlawful.").

Lastly, Defendant Annucci's argument with regard to Eleventh Amendment immunity is generally misplaced. Defendant's position is that he was merely conforming his actions with New York State law and thus, even though the civil action names him in his individual capacity, in essence it is really and solely an official capacity case. Def.'s Mem. of Law at pp. 38-40. While I agree that the Eleventh Amendment would bar any action against Annucci in his official capacity, the error in Defendant's reasoning is that it once again focuses in on State law to the exclusion of federal law. As noted in *Earley II* "[w]hatever conceptualization respondent-appellee has about the function of New York Penal Law sections 70.00 and 70.45, they cannot operate undermine protections contained in the Federal Constitution." *Earley II,* 462 F.3d at 150. In the present case Defendant Annucci is being sued for his own personal actions in failing to rectify an ongoing constitutional violation and this negates an Eleventh Amendment defense as to the claim against him in his personal capacity. Accordingly, the Court recommends that Plaintiff's Motion for Partial Summary Judgment on his Second and Third causes of action, relating to his Due Process rights, should be **granted** as to liability for the 300 days post *Early II* by which Mr. Early was constrained by the administrative imposition of PRS.

As for Plaintiff's Fourth Cause of Action, such can be easily disposed of because it relates solely to the Parole Defendants, who were already dismissed from the action by Decision and Order of the District Court, dated January 30, 2012, Dkt. No. 85, which was subsequently upheld by the

Circuit, *Vincent v. Yelich*, 718 F.3d at 174-75. Thus, Defendant's Motion for Summary Judgment should be **granted** as to the Fourth Cause of Action.

## III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, the Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 124) and Defendant's Motion for Summary Judgment (Dkt. No. 125) be **granted in part and denied in part** as follows:

1) As to Plaintiff's First Cause of Action, regarding the voluntariness of his plea, Plaintiff's Motion should be **denied** and Defendant's Motion should be **granted**, and this claim should be **dismissed**;

2) As to Plaintiff's Second and Third Causes of Action, regarding Due Process violations stemming from the continued imposition and enforcement of PRS post *Early II*, Plaintiff's Motion should be **granted in part** as to liability for the time period of August 31, 2006, the date of the *Early II* decision, through June 27, 2007, when Plaintiff was released from DOCS's custody; Defendant's Motion should be **granted in part** to the extent that Annucci should be entitled to qualified immunity prior to that time period and to the extent that any claims are asserted against Annucci in his official capacity, such should be **dismissed** in accordance with the Eleventh Amendment; and

3) As to Plaintiff's Fourth Cause of Action, regarding the Division of Parole acting in concert with DOCS, Defendant's Motion should be **granted** and this claim should be dismissed; and it is further

**RECOMMENDED**, that if the above recommendations are adopted, this case be deemed trial ready on the issue of damages on Plaintiff's Second and Third Causes of Action; and it is

further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:    February 27, 2017
         Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge