# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

SEAN EARLEY,

                            Plaintiff,

            - v -                                    Civ. No. 9:08-CV-669
                                                              (DJS)
ANTHONY J. ANNUCCI, *Executive Deputy*
*Commissioner and Counsel, New York State*
*Department of Correctional Services*,

                            Defendant.

---

**APPEARANCES:**                          **OF COUNSEL:**

VAHEY MULDOON RESTON GETZ LLP             JON P. GETZ, ESQ.
Attorney for Plaintiff                    FARINA MENDELSON, ESQ.
144 Exchange Boulevard, Suite 402
Rochester, NY 14614

HON. BARBARA D. UNDERWOOD                 KEITH J. STARLIN, ESQ.
New York State Attorney General           JAMES SEAMAN, ESQ.
Attorney for Defendant Annucci            Assistant Attorneys General
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

---

## DECISION AND ORDER

        This civil rights claim, brought pursuant to 42 U.S.C. § 1983, now comes to the Court

for a final decision following an extended motion history and a single day bench trial. The

parties have submitted comprehensive post-trial briefs. Dkt. No. 170, Pl.'s Post-Trial Mem.;

Dkt. No. 171, Def.'s Post-Trial Mem.  Having previously concluded that liability was

established against Defendant Annucci, the issues left to be resolved are ones of proximate cause and the quantification of damages. Plaintiff's position is that Defendant's misconduct resulted in extensive damages stemming from his 300 days of unlawful incarceration, and that the Court should consider an award of $330,000 in damages. *See* Pl.'s Post-Trial Mem. Defendant, through his counsel, argues that because Plaintiff, even if resentenced, would have been subject to the same period of post-release supervision ("PRS") under New York law, he is entitled only to nominal damages not to exceed one dollar. *See* Def.'s Post-Trial Mem. Alternatively, Defendant seeks to limit the duration of any period of damages by excluding that time which is attributable to an unrelated sentence, and for a further period of 90 days, which is said to be a period of time that would have been reasonable to have Plaintiff resentenced. *Id.*

For the reasons that follow, the Court concludes that the compensable period of damages that has been established by Plaintiff is limited to a period of 202 days of wrongful incarceration, and finds that an appropriate award of damages for that period is $150,000.

## A.  Relevant Dates

1. **February 29, 2000.** Plaintiff pleads guilty in Kings County Supreme Court to burglary in the second degree, as a second felony offender, and is sentenced by Hon. Michael Ambrosio to a determinate sentence of six years; no PRS is included in this sentence. Dkt. No. 156, Joint Pre-Trial Stip., at p. 3.

2. **After February 29, 2000.** The Department of Correctional Services ("DOCS")[1] administratively adds a five year term of PRS to Plaintiff's determinate sentence. *Id.*

---

[1] Since the events at issue occurred, the Department changed its name to the Department of Corrections and Community Supervision ("DOCCS").

3. **July 11, 2002.** Plaintiff moves in Supreme Court, Kings County, for an order to vacate his sentence to delete any term of PRS. Def.'s Trial Ex. 4.

4. **March 4, 2003.** By Decision and Order, Kings County, Supreme Court Justice Michael Ambrosio denies Plaintiff's Motion to vacate, noting that PRS is mandated by New York Law. Def.'s Trial Ex. 5.

5. **September 16, 2004.** Plaintiff is conditionally released from custody to supervision by the New York State Division of Parole, on parole for a period set to expire on Plaintiff's maximum expiration date of July 28, 2005, as well as on post-release supervision, which was then set to expire on September 16, 2009.[2] Joint Pre-Trial Stip. at p. 3.

6. **June 9, 2006.** The Second Circuit holds that Department of Correctional Services' imposition of a five-year term of post-release supervision on Plaintiff was contrary to clearly established federal law, and remands Plaintiff's petition for a writ of *habeas corpus* back to the District Court. *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006).

7. **August 16, 2006.** Plaintiff is arrested in Kings County and charged with several criminal offenses. Joint Pre-Trial Stip. at p. 4.

8. **August 31, 2006.** The Second Circuit Court of Appeals issues the *Earley II* decision. *Earley v. Murray*, 462 F.3d 147 (2d Cir. 2006) (concluding that administratively adding a five-year period of post-release supervision to a sentence, when PRS was not included in the sentence imposed at the sentencing hearing, violated due process).

9. **September 5, 2006.** Plaintiff is arrested again and charged with additional crimes arising out of events on August 16, 2006 and September 5, 2006. Joint Pre-Trial Stip. at p. 4.

10. **September 11, 2006.** Plaintiff is arrested a third time, and is taken into the custody of the New York City Department of Corrections ("NYDOC"). *Id.*

11. **October 2, 2016.** Plaintiff pleads guilty to criminal possession of stolen property in the fifth degree regarding the August 16 incident, and is sentenced to a definite sentence of four months. That sentence was served in the custody of NYDOC, at Rikers Island, from September 11, 2006, through and including December 8, 2006.

---

[2] As a result of a subsequent violation of PRS, not presently relevant, Plaintiff was reincarcerated for a twelve month period, and as a result, upon release his term of PRS was extended to September 10, 2010. Joint Pre-Trial Stip. at p. 4.

*Id.*; Dkt. No. 167, Trial Transcript ("Tr.") at p. 110-113.

12. **October 5, 2006.** Plaintiff pleads guilty to a violation of PRS as a result of the August 16, 2006 incident. Joint Pre-Trial Stip. at p. 4.

13. **December 8, 2006.** Plaintiff is declared "State ready" to be transferred to DOCS custody. *Id.*

14. **December 14, 2006.** Plaintiff is received into State custody at the Downstate Correctional Facility. *Id.* at p. 5.

15. **April 25, 2007.** A petition for a writ of *certiorari* is filed in the United States Supreme Court, seeking review of *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006). Dkt. No. 125-34 at pp. 6-7.[3]

16. **May 1, 2007.** District Court Judge Korman issues an Order granting Plaintiff's petition for a writ of *habeas corpus* excising the term of post-release supervision from Plaintiff's sentence. *Earley v. Murray*, 2007 WL 1288031, at *1 (E.D.N.Y. May 1, 2007).

17. **May 11, 2007.** Judgment is entered granting Plaintiff's *habeas* petition, but staying the Order for twenty-eight days "to permit the sentencing court to exercise its power to conform the sentence to the mandate of New York law." Dkt. No. 125-31.

18. **May 11, 2007.** The State advises the District Court that it does not plan to have Plaintiff resentenced. *See* Dkt. No. 125-34 ("[F]or several reasons, the State did not intend to avail itself of the 28-day stay[.]").

19. **June 25, 2007.** The State's petition for a writ of *certiorari* is denied. *Burhlre v. Earley*, 551 U.S. 1159 (2007).

---

[3] In considering the timeline of events leading up to this proceeding, the Court considers matters of which judicial notice may be taken, such as public filings, including the decisions and motions in the Earley *habeas* petition which are not subject to reasonable dispute. FED. R. EVID. 201; *O'Dell v. Schneiderman*, 2014 WL 2573159, at *2 (N.D.N.Y. June 9, 2014); *see also Bristol v. Nassau County*, 685 Fed. Appx. 26 (2d Cir. 2017) (approving of District Court taking judicial notice of decisions in a related state criminal proceeding); *Combier-Kapel v. Biegelson*, 242 Fed. Appx. 714, 715 (2d Cir. 2007) (finding that District Court did not err in taking judicial notice of the Impartial Hearing Officer's decision as well as certain other documents in the administrative record of an IDEA case); *In re Howard's Exp., Inc.*, 151 Fed. Appx. 46, 48 (2d Cir. 2005) (taking judicial notice of Bankruptcy Court docket); *Caro v. Fidelity Brokerage Servs., LLC*, 2013 WL 3929708, at *6 (D. Conn. July 26, 2013) (taking judicial notice of record in prior litigation between the same parties). It is also noted that the documents of which the Court takes judicial notice have been filed by the parties on the Court's docket in this very case in connection with other Motions.

20.    **June 27, 2007.**  Plaintiff is released from DOCS custody. Joint Pre-Trial Stip. at p. 5.

## B.  Duration of Damages

In the Court's previous Order, damages had been limited to a period of 300 days, starting on August 31, 2006 when *Early II* was decided, and extending until June 27, 2007 when Plaintiff was released from state custody without any additional sentence of post-release supervision.  Dkt. No. 140, Sept. 29, 2017 Order, *adopting* Dkt. No. 130, Report and Recommendation.  After hearing the proof at trial, however, it is now clear that the period of potential damage must be further narrowed.

First, the evidence submitted at trial shows that on September 11, 2006, when Plaintiff was taken into custody for a violation of post-release supervision, he was also detained for the joint reason of new criminal conduct.  According to the trial testimony, Plaintiff was arrested on August 16, 2016 when a car he was riding in was pulled over and stolen property was discovered.  Tr. at pp. 103-04.  It appears that Plaintiff was then released, because on September 6, 2006, Plaintiff was again arrested for possession of stolen property regarding the items that were found in the backseat of the vehicle during the August 16, 2016 stop.  Tr. at p. 105.  According to Plaintiff, the stolen property matter was scheduled for a grand jury hearing on September 11, 2016, and when he appeared in court to testify, he was arrested a third time for a violation of his conditions of post-release supervision, including, *inter alia*, his failure to report on certain days, as well as his failure to report the August 16, 2006 arrest.  Tr. at p. 107.

On October 2, 2006, Plaintiff pled guilty to possession of stolen property and received a three month sentence. Tr. at p. 110. Plaintiff's parole revocation hearing was held on October 5, 2006, at which point he pled guilty to a violation of parole's post-release supervision conditions for breaking into a home. Tr. at p. 112. Plaintiff was then housed with the New York City Department of Corrections, at Rikers Island, from November 11, 2006 to December 8, 2006, for the possession of stolen property charge, at the end of which time Plaintiff was declared State ready and, six days later, was transferred to the Downstate Correctional Facility for processing and to serve his sentence for the PRS violation. Tr. at p. 113; Joint Pre-Trial Stip. at pp. 4-5. Accordingly, the period of time Plaintiff was in custody for the possession of stolen property charge cannot be compensable, as the evidence is clear that Plaintiff was incarcerated for a separate, independent, and legal reason. *See Newton v. City of New York*, 171 F. Supp. 3d 156, 172-73 (S.D.N.Y. 2016) (noting that plaintiff was incarcerated for twenty-two years, but ten of those years were for a lawful conviction, so plaintiff was only seeking recovery for twelve years).

Next, although the Court already ruled that Defendant Annucci failed to act with objective reasonableness by not having Plaintiff resentenced or taking other appropriate action, I left open the issue of proximate cause. In other words, even if Defendant Annucci addressed the issue immediately upon the issuance of the *Earley II* decision, it would still take a period of time to take whatever corrective action was necessary. Defendant, citing to a separate case, indicates that a reasonable period of time to have an individual such as Plaintiff resentenced would be ninety days. Def.'s Post-Trial Mem. at p. 27 (*citing Hassell*

*v. Fischer*, 879 F.3d 41, 47 (2d Cir. 2018)).  The Court notes that the District Court that handled Plaintiff's *habeas corpus* petition designated a period of twenty-eight days to have that resentencing occur.  *Earley v. Murray*, 2007 WL 1288031, at *3.  Plaintiff's counsel has not specifically addressed this issue.  While I agree with Defendant's arguments in this regard, it is not necessary to determine the exact amount of time that corrective action would reasonably have taken, because the ninety day period Defendant proposes is less than the period from August 31, 2006 to December 8, 2006 and, as such, Defendant reasonably could have sought to have Plaintiff resentenced before he was declared State ready.  The majority of that time has already been excluded from the damage calculation as a result of the independent sentence for possession of stolen property.  However, the period from August 31, 2006 until Plaintiff's arrest on September 11, 2006, during which time Plaintiff was on release but under the limitations associated with PRS, should also be excluded as time that could have reasonably been utilized to seek to have Plaintiff resentenced.  This reduces the compensable period of the case to 202 days.

## C.  Proximate Cause and Nominal Damages

Having thus limited the potential period of damage, and prior to calculating the specific amount necessary to compensate Plaintiff for that damage, the Court must address Defendant's final argument that Plaintiff is only entitled to nominal damages no matter how long he remained in custody after the *Earley II* decision.  The reasoning behind this argument is that, whatever action was taken by Defendant Annucci after August 31, 2006, the end result would have been a resentencing of Plaintiff that, according to state law, was required

to include five years of post-release supervision.[4]  In support of that argument, Defendant notes that during the course of the criminal case Plaintiff himself had attempted to have the trial court resentence him without post-release supervision, and the trial court refused to do so.  Def.'s Post-Trial Mem. at p. 15; Def.'s Trial Ex. 5.  Defendant also relies heavily upon the recent *Hassell* decision, in which the District Court imposed nominal damages for an inmate who had PRS administratively imposed in violation of his rights, but who was subsequently resentenced to PRS *nunc pro tunc* by the trial court.  *Hassell v. Fischer*, 2016 WL 10920013, at *2 (S.D.N.Y. July 18, 2016), *aff'd in part, vacated in part, remanded*, 879 F.3d 41 (2d Cir. 2018) ("Whenever the date of resentencing, Justice Uviller undoubtedly would have imposed the same five-year PRS, *nunc pro tunc*, to the date Hassell was released from imprisonment.  Thus, the date of ultimate expiration of the PRS would not have changed.  There may have been an unnecessary delay of six months but it would not have changed Hassell's life in the slightest.").  Accordingly, Defendant argues that if he had taken the necessary steps to have Plaintiff resentenced after August 31, 2006, Plaintiff would have received the exact same sentence, and thus an award of nominal damages only is required.

To properly analyze Defendant Annucci's argument in this regard, the Court must consider the original constitutional violation.  Here, the constitutional violation was the administrative imposition of a post-release supervision sentence by DOCS pursuant to the

---

[4]  As the Second Circuit has recently noted, it is the defendant's burden to establish this "no harm-no foul" defense.  *Warren v. Pataki*, 823 F.3d 125, 141 (2d Cir. 2016).

policy established by Defendant,[5] and then the subsequent failure by Defendant Annucci to remedy that constitutional violation every day thereafter.[6] Viewed this way, Plaintiff's claim differs from other Fourteenth Amendment cases which concentrate on the process due in a particular hearing, and what the actual result would have been had the proper process been afforded by a particular defendant. *See Carey v. Piphus*, 435 U.S. 247, 263 & 266-67 (1978); *Warren v. Pataki*, 823 F.3d 125, 141 (2d Cir.), *cert. denied sub nom. Brooks v. Pataki*, 137 S. Ct. 380 (2016); *Miner v. City of Glens Falls*, 999 F.2d 655, 660 (2d Cir. 1993). For example, regarding the student suspension hearing that should have been held in *Carey v. Piphus*, and the civil confinement hearing that was neglected in *Warren v. Pataki*, the Courts correctly considered what the outcome of the hearing would have been had the procedural defect not occurred. *Carey v. Piphus*, 435 U.S. at 260; *Warren v. Pataki*, 823 F.3d at 141-42. Under that analysis, where a properly held hearing would have resulted in the suspension (*Carey*) or the administrative confinement (*Warren*), then, based on principles of proximate cause, the plaintiff is not entitled to damages that flow from that particular result, and where the plaintiff can prove no other damage, he or she is only entitled to nominal damages. *Id.*

A different analysis is appropriate here. The administrative imposition by DOCS of PRS to the sentence of Sean Earley was unconstitutional on its face, and there was no

---

[5] "[T]he inclusion of a five-year period of PRS in Earley's sentence when that PRS was not included in the sentence imposed at Earley's sentencing hearing violated his rights under the Due Process Clause of the United States Constitution." *Earley v. Murray*, 462 F.3d 147, 148 (2d Cir. 2006).

[6] *See Vincent v. Yelich*, 718 F.3d 157, 171-72 (2d Cir. 2013) (finding that "the State was required either to have [persons upon whom PRS had been imposed administratively] resentenced by the court for the imposition of PRS terms in a constitutional manner or to excise the PRS conditions from their records and relieve them of those conditions.").

"process" that could have been afforded to the inmate to make that administrative act by DOCS legal. Nor is there is any question that Plaintiff's deprivation - his incarceration for a PRS violation - would not have occurred, but for the violation of DOCS administratively imposing a PRS term. Nevertheless, and after carefully reviewing the legal landscape in New York and DOCS' response to it, the Second Circuit identified two lawful and appropriate *remedies* available to Defendant: one, to vacate the administratively imposed post-release supervision and the consequences that resulted from it; or two, to have the inmate resentenced by the sentencing court. *See Vincent v. Yelich*, 718 F.3d at 172.

Neither of those remedies was utilized in this case. Rather, Defendant failed to seek to have Plaintiff resentenced or, failing that, to remove the administratively added post-release supervision. Thus, Defendant's argument in his Post-Trial Brief that under *Hassell* Plaintiff is only entitled to nominal damages because the *potential* existed for him to be resentenced to a term which included post-release supervision, Def.'s Post-Trial Mem. at p.5, completely misses the mark.[7] District Court Judge Hellerstein's conclusion in the *Hassell* case that the plaintiff's life was not changed in the "slightest" was specifically premised upon the fact that the trial court in fact *actually* resentenced Mr. Hassell to post-release supervision, and that the sentence was retroactive and therefore covered the time period of

---

[7] Defendant relies on the mere possibility of a future resentencing as a defense to compensatory damages. The logical outgrowth of this argument is that Plaintiff could have been held indefinitely, even to the end of his administratively imposed PRS term, with no action being taken by DOCS to have him resentenced, and that Defendant would still be liable only for nominal damages. Such a result is neither required by precedent nor acceptable.

the administratively (and thus illegally) imposed PRS.[8]  *Hassell v. Fischer*, 2016 WL

10920013, at *2.  Hassell received only nominal damages for a period of incarceration that,

although it did not start out as such, was ultimately rendered valid by his resentencing *nunc*

*pro tunc*.  *Id.*  Earley, on the other hand, seeks damages for a period of incarceration that was

never lawfully imposed, even retroactively.

Having not taken advantage of the authorized remedies available to him, and instead

having Plaintiff held until his release on June 27, 2010, without any re-sentencing, Defendant

is now responsible for the damages that resulted from this unlawful and unconstitutional

confinement caused by the administratively imposed PRS.

### D. Quantification of Damages

A successful plaintiff in a § 1983 action is entitled to compensatory damages, so long

as such damages are pleaded and proved; they may not be presumed.  *Carey v. Piphus*, 435

U.S. at 262.  "The purpose of § 1983 would be defeated if injuries caused by the deprivation

of constitutional rights went uncompensated. . . ."  *Id.* at 258.  The Second Circuit has

recognized two types of actual damages stemming from a claim of wrongful imprisonment.

*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004).  One type of damages is associated

with proof of pain, physical injury, mental suffering, humiliation, psychological

deterioration, and associated medical expense.  *Id.* at pp. 122-23.  The second and distinct

---

[8]  This is similar to the holding by a number of courts that the effect of a successful administrative appeal is to cure any procedural defect that may have occurred at the disciplinary hearing. *See Sowell v. Ryan,* 823 F. Supp. 107, 110 (W.D.N.Y. 1992), *aff'd,* 996 F.2d 302 (2d Cir. 1993).  Of course, for this rationale to apply, there must have in fact been a successful appeal. *See Ford v. Nassau Cty. Exec.*, 41 F. Supp. 2d 392, 400 (E.D.N.Y. 1999) (holding that the plaintiff's plea and time-served sentence nullified his section 1983 claim for mandated work as a pretrial detainee, but holding that "had Ford not been sentenced to time served, this case would not be amenable to this 'no-harm' analysis").

category of actual damage relates to a plaintiff's loss of liberty. "Where the plaintiff was indisputably deprived of his liberty, and the conduct of the defendant responsible for the deprivation was found to be unlawful, we have held that the plaintiff is entitled to compensatory, not merely nominal, damages." *Id*. at 124. In connection with this second category of damage, the Second Circuit, relying upon New York cases, noted that an award of thousands of dollars is appropriate for even short periods of confinement. *Id*. at 125 (citing *Raysor v. Port Auth. of New York & New Jersey*, 768 F.2d 34, 39 (2d Cir. 1985) (collecting cases), *cert. denied*, 475 U.S. 1027 (1986).

As to the first category of damage, Plaintiff is not claiming any lost wage or other economic damage, and he acknowledges being well familiar with the general conditions of prison life. Tr. at pp. 89-99. Indeed, as appropriately noted by Defendant, Plaintiff has spent a large portion of his adult life in prison. Def.'s Post-Trial Mem. at pp. 40-44. Plaintiff did testify generally with regard to conditions of confinement: the lack of privacy; the difficulty in accessing the top bunk; that the food was bland and no real coffee was provided; that there were gangs in prison that controlled things such as the telephones; that the area where he was housed had particularly rambunctious younger offenders; and that he witnessed fights and had to be in a state of constant vigilance. Tr. at pp. 43-80. In observing Plaintiff's testimony and his demeanor, however, what struck the Court was Plaintiff's complete acclimation to the prison setting. He exhibited a vast knowledge of jail procedures and policies, never had a disciplinary issue, was a jail trustee or porter, and was able to handle the additional time in custody, in the Court's view, without severe difficulty.

Plaintiff does assert that specific events made his life while incarcerated more difficult. In particular, he points to aggravating factors including: transportation to the facility and outside locations in chains (Tr. at pp. 18-20); a slip and fall on black ice at the Greene County Correctional Facility on January 14, 2007 that resulted in a chipped elbow and his right arm turning black and blue, severe pain, and not being seen by a doctor for twenty days (Tr. at pp. 61-65); a February surgery on the elbow that resulted from that fall, as a result of which he was in a sling for three days (Tr. at pp. 65-71); feet problems caused by his not being timely given a sneaker pass until April 30, 2007 (Tr. at pp. 32-33); and being denied permission to attend the funerals of his father and his brother (Tr. at pp. 71-73 & 79). The Court agrees that these aggravating circumstances are properly part of any damage award. *Restivo v. Hessemann,* 846 F.3d 547, 588 (2d Cir. 2017) (upholding jury verdict against police detective who caused plaintiffs' wrongful convictions where plaintiffs suffered grave harm from their detention, including "violence against them while incarcerated"); *Newton v. City of New York*, 171 F. Supp. 3d 156, 174 (S.D.N.Y. 2016) (noting that one of the factors considered in a wrongful confinement award is whether an inmate suffered physical illness or injury while in custody); *Waters v. Town of Ayer*, 2009 WL 3489372 (D. Mass. Sept. 17, 2009) (including in award of damages the fact that the plaintiff contracted hepatitis C while incarcerated); *but see Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 161-64 (S.D.N.Y. 2009) (recognizing that subsequent intentional acts of assault or sexual contact while in custody are superceding and intervening acts).

As noted by Senior District Court Judge Hurd, it is often difficult to quantify damages

for emotional distress, mental anguish, and pain and suffering, "because such concepts are abstract and ill-suited to exacting calculation." *Ruhlmann v. Smith*, 323 F. Supp. 2d 356, 367 (N.D.N.Y. 2004). While each case is unique, certain principles, gained from the history of decisions that deal with compensation for wrongful incarceration, can be applied to the case at hand. For example, awards for a plaintiff who has a history of incarceration are generally lower than for a plaintiff who has never previously been incarcerated. Similarly, where the inmate is held beyond the end of a lawful sentence, a monetary award is often less than where the incarceration was wrongful from its inception. It does not follow, however, that Plaintiff is only entitled to minimal damages for the period of time when he was wrongfully detained, even where, as here, Plaintiff has spent a large portion of his life incarcerated and, as established by the evidence, was both familiar with and was relatively at ease in the prison system. At a basic level, freedom and incarceration are materially different. Therefore, it cannot be disputed that Plaintiff has "experienced a manifest and profound loss of liberty." *Sanabria v. State*, 29 Misc. 3d 988, 995 (Ct. Cl. 2010); *Ifill v. State of New York*, UID No. 2014-039-436 (Ct. Cl. Jan. 22, 2015) ("Certainly, there is no dispute that confinement beyond one's term of incarceration is a clear infringement on one's liberty and . . . can culminate in 'damages for the loss of the fundamental right to be free, lost opportunities to engage in everyday activities while confined, and for the mental anguish that accompanies the loss of liberty.'") (quoting *Sanabria v. State*, 29 Misc. 3d at 994).

The Court then looks to comparable state awards[9] and federal awards in cases which share characteristics similar to those experienced by Mr. Earley: *Henry v. State of New York*, UID No. 2018-032-006 (Ct. Cl. Mar. 19, 2018) (awarding $150,000 for 512 days incarceration beyond claimant's maximum expiration date of his time assessment, including 277 days in the Special Housing Unit, where claimant had been lawfully incarcerated "nearly consistently" since 2003); *Crews v. Cty. of Nassau,* 149 F. Supp. 3d 287 (E.D.N.Y. 2015) (upholding $175,000 compensatory damage verdict for 125 days of wrongful incarceration where defendants had established that the plaintiff had been incarcerated on lengthy occasions both prior and subsequent to the events as issue); *Miller v. State*, 46 Misc. 3d 1212(A) (N.Y. Ct. Cl. 2013) (awarding $35,000 for 23 days of wrongful confinement past the claimant's release date at the Downstate Correctional Facility and noting: "claimant's time at Downstate was not the first time he had been incarcerated. Claimant had already spent over 18 months in confinement for crimes that he committed and was not "new" to a life of incarceration. However, claimant's circumstances at Downstate were quite different from those that he had experienced [during his previous incarceration], in that, at Downstate, he was serving time that he believed he did not owe the State and could not be sure when, if ever, he would be released."); *Sanabria v. State*, 29 Misc. 3d 988, 996 (Ct. Cl. 2010) (awarding $20,000 for 91 days of wrongful incarceration).

Having observed Plaintiff and listened to his testimony with regard to his

---

[9] *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990) (noting that reference to state law damage awards in claims under 42 U.S.C. § 1983 is appropriate).

incarceration, and considering similar verdicts, I hereby award a total amount of $150,000 in damages for his loss of liberty for 202 days and for all the discomfort and injury associated with that detention**.**

### E.  Attorneys' Fees

As a prevailing party, Plaintiff is entitled to an award of attorneys' fees.  42 U.S.C. § 1988.  In the event that the parties cannot agree on the amount of reasonable fees, Plaintiff's counsel shall file an application with the Court within thirty days of the date of this Decision and Order, and Defendant shall have fourteen days to respond.

**SO ORDERED.**

Date:  November 15, 2018
          Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge